Case number 20-4222 Melissa Dovala v. Teri Baldauf Arguments not to exceed 15 minutes per side Ms. Fosnaught, you may proceed for the appellate Good afternoon May it please the court, my name is Jerry Fosnaught and I represent the warden I'd like to reserve three minutes for rebuttal Very well We ask this court to reverse the judgment of the district court The district court erred by reviewing the prejudice prong de novo and by failing to apply the AEDPA standard of review The district judge didn't support the review of de novo, did she? She said the prejudice prong was reviewed de novo, yes Oh, the prejudice prong, okay, not the deficient performance prong Right Okay, I'm sorry, I misunderstood No problem And by failing to apply the AEDPA standard of review, which in Richter provides that federal courts should determine what arguments or theories could have supported the state court's decision and ask whether it's possible for fair-minded jurists to disagree that those arguments or theories are inconsistent with the Supreme Court precedent In footnote 17 of the district court's decision, the district court acknowledged that there were two decisions from the appellate court in 2011 and 2016 Inexplicably, the district court found that the 2016 decision only addressed deficient performance, which it does not The court didn't specify which prong it was deciding under because it was essentially deciding whether to affirm a motion for relief from judgment And the court said that Davila hadn't met the standard for receiving relief from judgment The trial court order that she was seeking relief from judgment was based both on the deficient performance and the prejudice prongs This court's precedent requiring de novo review of the state court if the state court doesn't rely on one of the Strickland prongs is inconsistent with both Strickland and Richter In Strickland, the Supreme Court said that state courts need not decide on both prongs If they found that the petitioner had not met one prong, they could end it there That advice to the state court was taken here The state court found that Davila had not met the deficient performance standard and they didn't need to decide the prejudice prong What if we think this argument's wrong? What if we think that the district court applied the right standard there? What's your next argument? What is your other argument? I'm not sure. The state court seemed to decide the one prong, not the other Well, I would disagree as to the 2016 decision But they did specifically say they were only deciding the deficient performance prong in 2011 However, the decision in Richter, the Supreme Court notes that the decision to focus on cross-examination rather than to retain an expert is a matter of trial strategy, and that's what happened here How do you describe the double-deference standard? I've been trying to say it in my mind, but how would you describe the double-deference? Do you agree there's double-deference in this circumstance? Yes I assumed you would I think it applies to both prongs because, as the court said in Richter, you're deciding a claim, not components of a claim But setting that aside, on the deficient performance, I think you're right about the standard We have to give significant deference to the state court So how do you describe the double-deference, the framework that we're supposed to apply? The deference is because the state court judgment, the question of whether counsel performed efficiently and prejudiced the defendant, that is a deferential standard itself Because there's such broad leeway given to state courts to make their judgments, that's deferential And then this court has to engage the EDPA deference onto the state court's judgment that already deferred to a reasonable range of attorney performance that can equate to adequate representation So what are the limits? I mean, I understand you're going to argue that this was a judgment call by trial counsel But when does something cross the line and it's no longer a judgment call, it's just a really bad call for which the Strickland standard might be met for deficient performance? I mean, I think you'd certainly find it where the defense counsel did nothing Like no, didn't request any discovery, didn't look at the discovery Never talked to anyone or questioned anyone No witnesses, no What's that Supreme Court case? I mean, there is a Supreme Court case with that, is there not? Well, I mean, I'm not certain I'd cite Strickland as setting forth the test I know Yarbrough v. Gentry said We usually look for a case that's on point or close to being on point I mean, Strickland is a general standard It's a very generalized standard I know what Yarbrough v. Gentry said, that you don't Like, the Supreme Court had found even Clarence Darrow who called his clients monsters, was not a deficient attorney Well, yeah, I mean, really the closest case to ours is the Harrington v. Rickner case And that case, the argument was, I think, the same that's made in this case That you can't just attack the experts on one side That you have to get an expert to support your position That's what the argument was, and the Supreme Court rejected it And said, no, a matter of trial strategy could be to simply attack the prosecution's case And argue it didn't establish beyond a reasonable doubt the elements of the offense How did Judge Barker deal with Harrington v. Rickner? It doesn't appear that she engaged in any analysis of the Harrington v. Rickner Yeah, she relied on a 2007 case of Richley Ritchie Ritchie Which I think is in question after Harrington v. Rickner I mean, you agree with that I think Judge Larson wrote an opinion on that Right I definitely agree with that In addition, counsel, the way the trial court saw it Was that this wasn't simply a matter of not getting an expert It was a matter of not making the necessary inquiries to determine Whether cross-examination would be the best approach That basically what the attorney did was Through someone else, make informal inquiries of a neurologist And determine from that That his best chance was just smoke and mirrors And that there was no conversation, as I understand, with anyone About the time frame in which this injury had to happen That basically the lawyer accepted the position that it had to have been between I don't know, it was within three to five hours or something like that And he made no inquiry of anyone So what about that? The record does show that he consulted with three different doctors Dr. Clark, Dr. Bartek And the informal consultation through co-counsel with Dr. Swanson Now, the state court relies solely on this Dr. Pliapus And engages in no review of the cross-examination of Dr. Pliapus And he specifically noted, even in his cross-examination That the theory he presented could not be found in any treatise He acknowledged that on cross-examination He also acknowledged he wasn't a forensic pathologist And the trial court on the post-conviction review said Or in the motion for relief from judgment Said without presenting the testimony of a forensic A doctor with forensic experience You could not refute the testimony of Dr. Daniels So here, even Dr. Pliapus And they don't have a forensic expert Dr. Pliapus's standard, he acknowledged Could not be found in a medical treatise He was merely stating what his opinion was Which could not be found in any medical casebook In addition What's the evidence of guilt in this case? I mean, there's the obvious point that the child was dropped off in the morning Seemingly alive and well And that's not the case when the child's picked up the other day Right But what else complements that evidence? Such a strange case in my mind There's plenty of objective testimony But he was lethargic all day, right? And he was sleepy And Dovala said he had been congested for a few days And had a doctor's appointment the next day So it's entirely possible this child was sick But even Dovala's mother said the child was kicking its legs Dovala said he ate well Everything changed apparently at 3 p.m. Around 3 p.m. When she couldn't rouse him And even then she never called 911 The kid was turning blue Still didn't call 911 And eventually just took the kid out to the mother in the child seat But the doctors both testified That there was no evidence of white blood cells There was little evidence of edema And there was no disintegration of the red blood cells And that showed that this was a recent injury And you had no fibrin And all of that showed that there had been no chance of the baby to heal So that had to be a recent injury And there was no evidence of the injury to heal The injury to the head had no time to heal But there were also no marks anywhere, right? There was no sign of this supposed hit at the edge of the table? Other than the fracture, no But all the doctors testified that a child's elasticity of the skin Allows for an incredible amount of force And the child's skin elasticity will still allow for there to be no break in the skin And all of the experts testified to that Were there no witnesses other than Davila? Is that the only witness? Right And interestingly enough, the mother and Davila tried to later say That maybe Davila's son had come in and hurt the baby I guess is what their theory was at trial But in her statement to the police She never mentioned this one occurrence And the mother's statement regarding how this occurred Supposedly at trial they were saying That essentially she was doing whatever she was doing And the kid started screaming And the son had sat down But her prior statement was that she changed her statement And the prior statement was that she was sitting two feet away The child came in from another room, knelt down and said hi And this is the case in a lot of child abuse cases When you have a child care provider There are going to be children and a child care provider There aren't going to be adult witnesses that are going to testify And I will ask you to reverse the judgment of the district court Thank you All right, any further questions at this time? Judge White? Judge Raylor? You'll have your three minutes rebuttal All right, let's hear from the appellee Thank you, your honors My name is David Dalkin for the appellee Melissa Davila The court mentioned that the standard and strictness general Or excuse me, that the principles general And that's important because the court on in Yardbell v. Alvarado Explained the difference between a specific For instance, this court dealt with in Riddle In a general In a general, they acknowledged that You know, we're not going to be able to do a case-by-case precedent For what equates to ineffective That district court judges, because of their experience Will be able to understand reasonable Reasonable is a legal term they're all familiar with That they wouldn't be a district court judge without it And there would be a range When you have a general standard There's a little more of a range A little more of discretion When they're doing your review And they acknowledged that the IAC claims Would have to be built on a case-by-case basis The case law would be built up And they said The district court's looking at the same record we're looking at The district court didn't do anything In this case, right? The district court, was there an evidentiary hearing in this case? No The district court didn't do anything Whoever runs the district court's looking at the same ones we're looking at Yes, but the point I'm trying to What is the point? I think your biggest obstacle here To say that the Ohio Court of Appeals Determinations were unreasonable Is the fact that the magistrate Looking at the same record that we looked at The magistrate, who is now a federal district judge Said, in his opinion That the Ohio Supreme Court's determination Were not unreasonable So here you have fair-minded jurors Looking at the same record One says it's unreasonable One says it's reasonable Hence, I don't think you've got Epa It's never Come epa, that's all Sorry, I didn't mean to interrupt The problem with using a numerical analysis Is by definition Every habeas case Will have one to four to ten State court judges Rule against it Or it wouldn't be in federal court If it was just a numerical That other judges disagree There would be no habeas I mean, Judge Griffin was pointing to another federal judge Yeah No, I understand But the federal magistrate said That the Ohio Supreme Court's Determinations were not unreasonable Application of clearly established Federal law as determined by the Supreme Court And under epa We're supposed to determine Whether all fair-minded jurors Would view the case the same way As an unreasonable application And if all reasonable jurors Would say it's an unreasonable application Well, you win But if there's a disagreement Among fair-minded jurors Which we have here with the magistrate You don't win, you lose Right? Here's where I disagree with that Okay, tell me why I mean, I know that But the problem is Is that if the standard isn't addressed In this case, it's Wiggins Wiggins is what? Wiggins? It's the Wiggins case It's in this case In Wiggins This facts aren't terribly different than Wiggins In Wiggins it was a death penalty case But the issue was When you're talking about strategy Here for Melissa The issue was Was it a reasonable strategy To just rely on cross-examination What Wiggins says The Supreme Court in Wiggins says The focus isn't on what was done The focus isn't on You know How they did Or the answers Or whether he had it effective The focus is on The preparation The investigation That the defense counsel made In determining the strategy And if he didn't Or she didn't Do a complete investigation Which may or may not include an expert Then the decision is per se unreasonable Once you get that it's unreasonable Then you go on to the prejudice You have to show You have to show There was a lack of investigation That would have led to something Yes If it was just a total rabbit hole That wasn't going to lead to anything So what's your lead to here? Your best case Or the point you think That should have been pursued More aggressively Is that this injury Could have occurred earlier Well no Before the child Got to the daycare center right And it was like a late onset injury No The point that should have been Addressed more aggressively Particularly in the state court Was the inferior And lack of investigation Doesn't the investigation Have to lead to something? Yeah You have to tell us I'm trying Maybe I've got to step ahead I'm trying to figure out What the investigation Would have led to How you're presenting that case And how that was both Deficient and prejudicial What we know from the autopsy In the EMS records There's no bruising There was no coup or contrecoup And the opinion Couldn't have been a direct impact Because you'd have had Some sort of surface bleeding Also the expert disagreed with That it was a hemorrhage This was caused Excuse me By the injury from direct impact There was hemorrhaging That had the child Had immediate care That the child might have been saved That the heart arrhythmia Was caused by the hemorrhage The point of the four year old Being there was On a child that young That it didn't take much pressure That the brain platelets And stuff hadn't attached It wouldn't take a lot of pressure Or a squeeze Or something to the eye To cause the hemorrhaging And so this was What are you getting at? What I'm getting at What's another explanation? I mean I As I said your friend On the other side It's a really strange case There's not a lot of I guess hardly any direct evidence Just a couple pieces Of circumstantial evidence So what is your explanation? What defense Would the Should counsel put on For your client That this was caused By a four year old For which your client's not liable Or caused before the child Reached the daycare center? First of all He didn't have to prove It's Just give me Give me something else Or give us Well what they argued What the doctor argued Was that it could have been The four year old The four year old was there He wasn't being watched It wouldn't take A lot of pressure And the doctor In his affidavit Said absolutely A four year old Could cause that pressure If it's the four year old Is that Like had some A negligent homicide Or manslaughter The child Because your Under Ohio law Your client was convicted Of a number of offenses Yeah I mean obviously And I don't have the statute In front of you But obviously If she was reckless Or careless In not watching Wasn't that one of the charges She was convicted of? It wouldn't be murder But it wouldn't be A purposeful kill So the lowest The lowest offense She was convicted of Was not A non It wasn't a manslaughter Or Wasn't she convicted Of four offenses? Yeah They all merged Into murder And the point is The jury Didn't have The opposing Investigate They didn't have Another opinion You know when you The problem when you Talk to the doctor That you know He asked He came up with After supposedly Reading these treatises That there was A genetic Excuse me A genetic mutation In which the Lawyer said Yeah that's crap He said in his Deposition it was crap The problem with that Is that You know The expert For the state Said well Remote And then supposedly That shows his Effectiveness It can't be In fact Under Ohio law The reasonable doubt Instruction Specifically says In the State of human affairs There's always Some doubt You know There's always And so Basically when you Say it's remote It's having a jury Exclude it So it's not The effectiveness Of this cross But that's not The point The point is The investigation No money was ever Paid to an expert No expert said They had I thought there was Two thousand dollars Paid to Somebody or other But he didn't Look at all the All of them said I didn't look at The material Okay but wasn't There two thousand dollars Paid to one expert Well he added OBGYN Which of course I don't know How that would be Helpful in this case Yeah I think That's where the money Went for that There were no Reports I know In the point And he actually Misled the client Said well These people are Agreeing that That wasn't the case All of the experts Said well for instance The husband of the Wife said Oh yeah maybe Maybe it sounds like One impact But hadn't looked At an example So he was Brief Conversation And for a lawyer To rely upon that For not making Further inquiries This was a brain injury When you have A homicide The number one The first thing you do Is determine The cause of death That's the first thing That you do And when you're Just Not talking It's a brain injury And he did not Sit down And provide all Of the records To a neurologist My notes say That the Defense counsel Paid Dr. Francis Barkett B-A-R-T-E-K $2,000 You don't Dispute that do you? No Okay He didn't Do anything Alright But you told me He didn't pay any money And that I think that was An incorrect Assertion But relatively For experts They're charging Okay The other problem About the theory Of this Five year old Four year old Doing it Was that your Client Early on Told the police That there Were No other Suspects That Could have Done this And she Made quite clear Statements Or admissions That there was Nobody else There That's correct Isn't it? And defense counsel Was saddled With those Admissions By his client Once he got The case I mean Before he came Into the case She had already said That there Weren't other Suspects Isn't that Correct? And that Limited his Strategies Wasn't she Asked that Question In the I'm sorry Wasn't she Basically Told By the police What the Relevant time Frame was Yes And it Leads to My point Of the Lack of Investigation A key Thing that I'll call Him Dr. P Noted Was It came Out that The defense Attorney Didn't even Know the Time frame He thought It was Spontaneous Until the Actual testimony In court But what the Defense expert Said is I don't know Why we're Limited to Three to five Hours This could Have happened Before she Even got To the Daycare Center So it's Not a Four-year-old I asked You for Your best Theory You told me It was The four-year-old While the Child was At the Center But this Testimony Totally Blows up That defense In a lot Of ways So now You're going To a Different Case I thought You were Moving to The pre That the Child was Injured Before the Child got To the Which is Different than The four-year-old At the Facility Right You Asked Based on The evidence At trial What was The best That was There This is Post-conviction Evidence Point being That by not Having a Thorough Investigation You're right The lawyer Was handcuffed And was stuck With what he Thought was A spontaneous Injury I'm just Trying to figure Out what you Thought What you Should have Investigated I guess And The Four-year-old Committing The Unfortunate Act While The Child Was at The Facility Has a Big hurdle That Judge Griffin Pointed out To overcome That's not What I'm Arguing That was A possibility Stated by The doctor But he Also stated That it Was wrong To put This time Frame It could Have been As much As 12 Hours Before And in Fact It could Have Happened Before It even Got to The Detail I thought That was Your best Point I Misunderstood I Thought You Meant Based On What Came In     The Case Did You Disagree With The Mechanism Of death Or the Yes Okay And Did The Did The Lawyer Investigate That No The Lawyer This was Part of The Problem May I Can Finish My Time Part Of The Problem Was When You Have A Direct One Instrument There Would Be An Injury Of Some Sort Maybe A Cut At  The Internal Injury When There Are No Marks On The Outside I Don't Remember Specific Testimony By Either Doctor Stating That Okay And Which Do You Think Is More Significant The Failure To Explore The Time Frame Or This Different Method Of Injury Well Both They Go Together As A Cumulative Error Because If You Had An Expert Talk About How The Injury Occurred And It Is Explained That This Is From Internal Bleeding Caused By Compression That In Turn Would Extend The Time Period In Which This Could Have Happened So They Go Together I Don't Know That You Could Okay But The Post Conviction Expert Did Say That It Was An Inflicted Injury Yes There Is  Inflicted Injury In Ohio Court Of Appeals Yes Okay So You Are Not Arguing That Their Factual Findings Are Clear And Convincing Error The Court May Disagree Okay Very Good Any Further Questions Thank You For Your Argument And Your Representation Let's Hear From The Warden Three Minutes As The State Witnesses Testified There Was No Time For Bruising Because The Injury Occurred So Quickly No Contra Coup The State Experts Testified On A Five Month Old Skull Is Flexible And Soft So There Would Not Be  No Time For Bruising Because The Injury      Coup The State Experts Testified On A Five Month Old Skull Is Flexible And Soft So Quickly No There Was No Time For Bruising Because  Injury Occurred So   Time For Bruising Because The Injury Occurred So Quickly No Time For Bruising Because Naturally The Injury  So Quickly No  For Bruising Because Naturally The Injury Occurred So